UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SANDRA EILAND, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:12-CV-00192 |
| | § | |
| SAN JACINTO METHODIST HOSPITAL, | § | |
| | § | |
| Defendant. | § | |

### MEMORANDUM OPINION AND ORDER

**I.   INTRODUCTION**

Pending before the Court are the defendant's, San Jacinto Methodist Hospital (the "Hospital"), motion for summary judgment (Docket Nos. 22-23), the plaintiff's, Sandra Eiland (the "plaintiff"), response (Docket No. 24), and the Hospital's reply (Docket No. 25). Having carefully reviewed the parties' submissions, the record and the applicable law, the Court hereby GRANTS the Hospital's motion for summary judgment.

**II.   FACTUAL BACKGROUND**

This is an age discrimination case. The plaintiff started working at the Hospital in 2006 as a Registered Nurse. She signed a document acknowledging that, as a Registered Nurse, she was required to discuss and develop the "plan of care for her shift with the patient and the multidisciplinary team" and demonstrate the components of the Hospital's "I CARE values," *i.e.*, integrity, compassion, accountability, respect, and excellence. The plaintiff also acknowledged that she was required to demonstrate the Hospital's "Service Pride standards" -- smile and make eye contact, greet each patient and visitor, and display appropriate body language at all times;

report all accidents promptly and correct minor safety hazard; and communicate with peers and management regarding any hazards identified in the workplace.

The record contains several disciplinary warnings and/or reports against the plaintiff. On October 10, 2006, the plaintiff was admonished for "[f]ailure to manage [her] time" and "[i]nability to recollect things already taught." She was warned that "if standards are not with level of training, [she] will need to think of an alternative." Another report from January 16, 2008, notes that a patient complained that the plaintiff failed to check her allergy bracelet and almost gave the patient a medication to which she was allergic.

On February 24, 2008, the plaintiff was cited for failing to properly label a specimen for testing. She was also admonished, on March 14, 2008, for failing to recognize the deterioration of a patient and failing to report it to the physician.

In a Disciplinary/Counseling Report from September 26, 2008, the plaintiff was disciplined for failing to administer medication to a patient with seizure. The report notes that the plaintiff "has consistently demonstrated inability to prioritize patient care [and] becomes argumentative when addressed." She was warned that her failure to meet expectations will result "in immediate termination."[1]

Another Disciplinary/Counseling Report from May 25, 2010, indicates, *inter alia*, that the plaintiff failed to administer medication prescribed by a physician for a "life threatening condition;" she admitted a patient with the wrong identifying wristband; she failed to re-check a patient's glucose level; and a patient complained that the plaintiff shouted questions at her from a computer outside the room, compromising the patient's confidentiality. The plaintiff was warned that her failure to uphold the values of the Hospital will "result in termination of

---

[1] The plaintiff and her supervisor both signed the report. In a handwritten note, the plaintiff simply noted "I disagree with [being] argumentative," but did not take exceptions with anything else in the report.

employment." The plaintiff signed the report and there is no indication that she took issues with it at the time it was issued, but she now claims that it was falsified against her.

A report from October 10, 2010, indicates that a patient complained about the plaintiff being rude to her on two separate occasions. The report also notes that she was rude to paramedics.[2]

In another report from October 12, 2010, the plaintiff was disciplined for being "very rude" to a patient. The report warned that this was the plaintiff's "final warning. There have been several complaints of [the plaintiff] being rude to patients [and] [f]ailure to meet these expectations will result in immediate termination."[3]

According to the "Document of Termination," on October 17, 2010, the plaintiff started an IV on a patient in the emergency room, but failed to remove it before the patient left.[4] The patient returned to the emergency room the next day with bruising and swelling around the IV. The document further notes that the plaintiff failed to administer antibiotics to a patient with pneumonia.[5]

---

[2] There is no indication that the plaintiff disputed the content of the report when it was issued, but at her deposition, she claimed that she "believed" the report was "incorrectly reported [and] was incorrectly written up."

[3] The plaintiff signed the report, but in a handwritten note, she asserted "I receive a lot of compliments about how I care for patients. I get hugs an[d] family members com[e] back to say thank you even after their love[d] one has gone up stairs." She took no other exceptions with the report when it was issued but, during her deposition, she claimed that it was falsified and that the Hospital was "gathering . . . false evidence."

[4] During her deposition, the plaintiff claimed that the patient left the Hospital with the IV still in place despite her instructions not to do so. According to the plaintiff, she asked the patient and her mother to stay in the room while she went to get a wheelchair and "it was customary not to remove any IVs until the very last minute" because the patient's condition could decline. The plaintiff asserts that when she returned to the room, the patient had left "against [the plaintiff's] advice, against [her] request to wait until [she] got" the patient fully discharged.

[5] The plaintiff claims that a copy of the Hospital's computer record showed that the order for antibiotics was completed twenty minutes before she came on duty and, as such, the nurse on duty before her was supposed to administer the medication. The Hospital's Director of Human Resources has declared that the other nurse was also counseled for not administering the medication. The plaintiff does not dispute the Hospital's representation, but she asserts that the other nurse who was "actually at fault" was under the age of forty and she was "merely counseled" while the plaintiff, who was "innocent of any misdeed or negligence," other than being over the age of sixty, was fired.

On October 20, 2010, the plaintiff was terminated for "consistently" failing to follow the Hospital's "I Care" values and failing to "maintain provision of care according" to the Hospital's standard.[6]

The plaintiff does not deny the existence of the disciplinary reports against her, but claims that the Hospital has falsified and "manufactured bogus and trivial complaints against her in order to cover its actual motive for" termination her, *i.e.*, her age.

The plaintiff, who was about sixty-one years old at the time she was terminated, filed this suit, claiming age discrimination under the Age Discrimination in Employment Act ("ADEA").[7]

## III.     CONTENTIONS OF THE PARTIES

### A.     The Hospital's Contentions

The Hospital argues that, even assuming the plaintiff can establish a *prima facie* case for age discrimination, the reasons for terminating her were legitimate and non-discriminatory, *i.e.*, her numerous write-ups and disciplinary actions for rudeness to patients and for endangering patient health and safety. The Hospital further contends that the plaintiff has failed to establish that the reasons for terminating her were pretextual and that age was the "but for" cause of her termination.

### B.     The Plaintiff's Contentions

The plaintiff seems to argue that the underlying decisions to terminate her were erroneous and, as such, there are "genuine material fact issues in dispute." She also appears to argue that younger patients who made similar mistakes were not terminated.

---

[6] The "Documentation of Termination" specifically mentions the write-ups from May 25, October 10, 12, and 17, 2010, as the reasons for the plaintiff's termination.

[7] The plaintiff admits that prior to her termination she never claimed that the disciplinary actions against her were based on age. She appealed her termination with the Hospital three times and during the appeal process, there is no indication that she ever specifically alleged that her termination was based on age. Moreover, the plaintiff acknowledges that, prior to working for the Hospital, she filed an age discrimination suit against a school district where she was employed as a computer technician.

## IV.     SUMMARY JUDGMENT STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56 (c). "The [movant] bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998) (citing *Celotex v. Catrett*, 477 U.S. 317, 322–25 (1986). Once the movant carries this initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *See Fields v. City of S. Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991). The nonmovant must go beyond the pleadings and designate specific facts proving that a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmovant may not rest on conclusory allegations or denials in its pleadings that are unsupported by specific facts. FED. R. CIV. P. 56(e). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 248 (1986).

In determining whether genuine issues of material fact exist, "factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that a controversy exists." *Lynch*, 140 F.3d at 625. "A dispute regarding a material fact is 'genuine' if the evidence would permit a reasonable jury to return a verdict in favor of the nonmoving party." *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 651 (5th Cir. 2004). Thus, "[t]he appropriate inquiry is 'whether the evidence represents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must

prevail as a matter of law.'" *Septimus v. Univ. of Houston*, 399 F.3d 601, 609 (5th Cir. 2005) (quoting *Anderson*, 477 U.S. at 251–52).

## V. ANALYSIS AND DISCUSSION

Under the Age Discrimination in Employment Act ("ADEA"), it is unlawful for an employer "to discharge . . . or otherwise discriminate against any individual with respect to h[er] compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Where no direct evidence of age discrimination is offered, courts have applied a three-step burden-shifting analysis. *See Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 377-378 (5th Cir. 2010) (citing *McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973)). Under this standard, the plaintiff must first establish a *prima facie* case of age discrimination, and, if successful, the burden shifts to the employer to produce evidence that the plaintiff was discharged for a nondiscriminatory reason. *See Reeves v. Sanderson Plumbing Prods, Inc.*, 530 U.S. 133, 142-143 (2000); *Jackson*, 602 F.3d at 378. If the employer meets its burden, the plaintiff must then show that the reason provided was a pretext for discrimination. *See Jackson*, 602 F.3d at 378. Nevertheless, although "intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves*, 530 U.S. at 143.

The Hospital argues that, even assuming the plaintiff has established a *prima facie* case of age discrimination, the reasons for terminating her were legitimate and non-discriminatory and the plaintiff has failed to establish that the Hospital's reasons were pretextual.[8] The Court finds the Hospital's arguments persuasive and grants the motion for summary judgment.

---

[8]To establish a *prima facie* case of age discrimination, a plaintiff must show that: (1) she was discharged; (2) she was qualified for the position; (3) she was within the protected class -- over the age of forty -- at the time of

### A. The Hospital Has Offered A Legitimate, Non-Discriminatory Reason For Terminating the Plaintiff.

Since it is assumed that the plaintiff has established a *prima facie* case of age discrimination, the burden now shifts to the Hospital to produce a legitimate, nondiscriminatory reason for terminating the plaintiff. *See Reeves*, 530 U.S. at 142-143; *Jackson*, 602 F.3d at 378. The employer's burden is easily satisfied because it is a burden "of production, not persuasion" and it need not involve a "credibility assessment." *Reeves*, 530 U.S. at 142; *see also Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 898 (5th Cir. 2002).

In this case, the Hospital has offered evidence of a lengthy disciplinary record against the plaintiff for poor performance and for being rude to patients. Specifically, the plaintiff received several write-ups and warnings, including, *inter alia*, failing to properly label a specimen for testing; failing to recognize the deterioration of a patient and failing to report it to the physician; failing to administer medication prescribed by a physician for a "life threatening condition;" and admitting a patient with the wrong identifying wristband. Furthermore, according to the "Document of Termination," on October 17, 2010, the plaintiff started an IV on a patient in the emergency room, but failed to remove it before the patient left, causing the patient to return to the emergency room the next day with bruising and swelling around the IV; and she also failed to administer antibiotics to a patient with pneumonia. The plaintiff was also warned several times, before her termination, that her substandard performance and failure to meet the Hospital's standards would result in termination.

---

discharge; and (4) she was either (i) replaced by someone outside the protected class, (ii) replaced by someone younger, or (iii) otherwise discharged because of his age. *See Jackson*, 602 F.3d at 378. Since the Hospital has assumed that the plaintiff has established a *prima facie* case of age discrimination, the Court need not address that issue.

Therefore, the Court finds that the Hospital has produced a legitimate, non-discriminatory reason for terminating the plaintiff, *i.e.*, her poor work performance. *See Dees v. United Rentals N. Am., Inc.*, 505 F. App'x 302, 304 (5th Cir. 2013) (unsatisfactory work performance was legitimate, non-discriminatory reason for terminating the plaintiff); *Cramer v. NEC Corp. of Am.*, 496 F. App'x 461, 466 (5th Cir. 2012) (inadequate work performance constitutes a legitimate, non-discriminatory reason for terminating an employee); *see also Crawford v. Formosa Plastics Corp., Louisiana*, 234 F.3d 899, 902 (5th Cir. 2000).

### B. The Plaintiff Has Not Established That The Hospital's Reason For Terminating Her Was Pretextual.

Having determined that the Hospital has produced a legitimate, nondiscriminatory reason for terminating her, the burden rests squarely on the plaintiff to establish that the Hospital's reason was a pretext for discrimination. *See Jackson*, 602 F.3d at 378. A plaintiff may show that the employer's nondiscriminatory reason was pretextual by producing evidence of disparate treatment or evidence that the proffered explanation is "false" or "unworthy of credence." *Reeves*, 530 U.S. at 143 (citations omitted); *Cramer*, 496 F. App'x at 465; *Dees*, 505 F. App'x at 304 ("it is insufficient under the ADEA to show that discrimination was a motivating factor; [the plaintiff] must show that age was the "but for" cause of the challenged adverse employment action").

In an attempt to establish pretext, the plaintiff seems to argue that: (1) the disciplinary write-ups against her were falsified and; (2) younger employees, who made similar mistakes, were treated more favorably than her. The Court finds the plaintiff's arguments unpersuasive.

Regarding the October 17, 2010, incident where the plaintiff allowed a patient to leave the emergency room without removing an IV from the patient's arm, she claims that the patient left the Hospital despite her instructions not to do so. Similarly, the plaintiff asserts that her

citation for failing to administer antibiotics to a patient with pneumonia was erroneous because any mistake was made by the nurse who was on duty before her. Besides those two incidents, however, the record establishes that the plaintiff amassed several other warnings/write-ups for substandard performance and improper conduct toward patients. Moreover, although the plaintiff now claims that her disciplinary record was falsified by the Hospital, that assertion is based solely on her subjective belief, which is insufficient to establish pretext. *See Moreno v. Brownlee*, 85 F. App'x 23, 26 (5th Cir. 2004) ("a plaintiff's subjective belief, alone, is insufficient to establish a claim of discrimination"); *E.E.O.C. v. La Office of Cmty. Servs.*, 47 F.3d 1438, 1448 (5th Cir. 1995) (in an age discrimination case, the Fifth Circuit noted that, "an employee's subjective belief of discrimination, however genuine, cannot be the basis of judicial relief").

In any event, merely disputing the employer's assessment of the plaintiff's work performance "will not necessarily support an inference of pretext." *Shackelford v. Deloitte & Touche*, LLP, 190 F.3d 398, 405 (5th Cir. 1999); *see also Love v. Motiva Enterprises LLC*, 349 F. App'x 900, 905 (5th Cir. 2009) (although the plaintiff disputed the accuracy of the defendant's evidence, the courts "do not second-guess an employer's non-discriminatory assessment of an employee's performance"); *LeMaire v. Louisiana Dep't of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007) ("Simply disputing the underlying facts of an employer's decision is not sufficient to create an issue of pretext").

The plaintiff also seems to argue that younger employees, who made similar mistakes, were treated more favorably than her.[9] For example, the plaintiff asserts that while she was fired

---

[9]The plaintiff admits that prior to her termination she never claimed that the disciplinary actions against her were based on age. Moreover, the plaintiff appealed her termination with the Hospital three times and during the appeal process, there is no indication that she ever specifically alleged that her termination was based on age. Those failures on the part of the plaintiff are telling because she is not a neophyte to age-discrimination suits. Specifically,

for the October 17, 2010, incident (failing to administer antibiotics to a patient), the nurse on duty before her, who was under the age of forty, was "merely counseled" for the same error. The plaintiff, however, has failed to provide evidence that the other employee was younger than her.

More importantly, the plaintiff has failed to establish that the employment actions against her and the other nurse were taken "under nearly identical circumstances," *i.e.*, that she and the other nurse "shared the same supervisor or had their employment status determined by the same person . . . and have essentially comparable violation histories." *Lee v. Kansas City S. Ry. Co.,* 574 F.3d 253, 260 (5th Cir. 2009). In this case, the record establishes that the plaintiff has a lengthy disciplinary record, but she has provided no evidence that the other nurse had any citations besides the one for the antibiotic incident. Therefore, it was reasonable for the Hospital to simply counsel the other nurse while terminating the plaintiff who had a pervasive disciplinary history.

During her deposition, the plaintiff also asserted that another nurse who was younger than her left an IV in a patient but was not disciplined. The plaintiff, however, provides no evidence whatsoever regarding the nurse's identity, age, and the circumstances of the alleged event. Moreover, she has not alleged, let alone established, that the circumstances were "nearly identical" to hers.

In essence, the plaintiff has not established "at a new level of specificity" that the Hospital's reason for terminating her (her well-documented unsatisfactory work performance) was a pretext for age discrimination. *Harris v. First American Nat. Bancshares, Inc.*, 484 F. App'x 902, 904 (5th Cir. 2012) (the plaintiff must show "at a new level of specificity" that the

---

the plaintiff acknowledges that she sued another employer for age discrimination prior to starting her position with the Hospital. Therefore, it is reasonable to assume that if the plaintiff truly believed the Hospital was discriminating against her based on age, she would have mentioned it prior to her termination and/or during the appeal process.

employer's reason was pretextual); *see also Reeves*, 530 U.S. at 143 (to establish pretext, the plaintiff must produce evidence of disparate treatment or evidence that the proffered explanation is "false" or "unworthy of credence"); *Dees,* 505 F. App'x at 304 ("it is insufficient under the ADEA to show that discrimination was a motivating factor; [the plaintiff] must show that age was the "but for" cause of the challenged adverse employment action").

## VI.  CONCLUSION

Based on the foregoing discussion, the Court holds that the plaintiff has failed to establish that the Hospital's legitimate, non-discriminatory reasons for terminating her, *i.e.*, her poor work performance and improper conduct toward patients, were pretextual. Therefore, the Court GRANTS the Hospital's motion for summary judgment in its entirety.

It is so **ORDERED**.

SIGNED on this 20th day of August, 2013.

_____
Kenneth M. Hoyt
United States District Judge